## UNITED STATES v. DI CARLO.
### No. 329.

Circuit Court of Appeals, Second Circuit.
April 3, 1933.

CHASE, Circuit Judge, dissenting.

receive, conceal, store, barter, sell, or dispose of any motor vehicle, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be punished. * * *" U. S. C. title 18, § 408 (18 USCA § 408).

While the offenses of transporting a motor vehicle in interstate commerce and of receiving, concealing, or storing such a vehicle that is a part of interstate commerce, knowing it to have been stolen, may be established by circumstantial evidence, there must, of course, be sufficient proof, whatever its nature may be, to justify the submission of the case to a jury.

Even if the altered motor number, the registration of the car in the name of an unascertainable owner, the defendant's denial that he had even seen the car or operated it, or knew anything about it or about Goldman, be regarded as circumstances showing that Di Carlo was knowingly a receiver of stolen goods, it may still be argued that they furnished no sufficient proof that he had transported or caused the car to be transported from Chicago or had received, concealed, or stored it when moving in interstate commerce. It may indeed be argued that the license issued in New York in the name of Frank Goldman eight weeks before the defendant was seen driving in the car indicated that it had come to rest in that state and ceased to be a subject of interstate commerce prior to the time when he acquired it; and this argument is said to be strengthened by the fact that there was no definite proof that he had any connection with the taking out of the license. His denial at police headquarters that he knew anything about the car may have been induced by the fear of a man who had knowingly received a stolen car after it had ceased to move in interstate commerce, and was in danger of prosecution in the state courts, or·even by no more than the unfounded alarm of one under arrest.

But, though we cannot know that the defendant stole this car or received it with knowledge that it was stolen, and cannot be assured that with such knowledge he caused it to be transported or that he received or concealed or stored it, while moving in interstate commerce, we think that the evidence was sufficient to justify a verdict to that effect.

There was evidence that the car found in defendant's control had been stolen in another state three months before, that the motor number had been altered, that the registration was in the name of a fictitious per-

Lehr, Goldman & McGovern, of Buffalo, N. Y., for appellant.

Richard H. Templeton, U. S. Atty., of Buffalo, N. Y. (Frederick T. Devlin, Asst. U. S. Atty., of Buffalo, N. Y., of counsel), for the United States.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above).

The statute reads: "Whoever shall transport or cause to be transported in interstate or foreign commerce a motor vehicle, knowing the same to have been stolen, shall be punished; * * *" and "Whoever shall

son, and that, when questioned at police headquarters, the defendant had denied all connection with the car and all knowledge of Frank Goldman, the putative owner. No attempt was made to call witnesses to explain the situation and meet the inference that may be drawn against a man in possession of property recently stolen. While, as Judge Manton said in Drew v. United States (C. C. A.) 27 F.(2d) 715, at page 716, "The presumption of guilt flowing from such possession grows weaker as the time of possession recedes from the time of the original taking," we held in Boehm v. United States, 271 F. 454, that a jury might infer guilt, when the possession of stolen goods was unexplained, though in that case a longer time had elapsed between the taking and the discovery of possession in the defendant than here. In Boehm v. United States, supra, eight automobile tires had been stolen by some one from a railroad car. Four months after the burglary, two of these tires were sold by the defendant at a very low price, and nine months after the burglary some of the others were found near his farmhouse under a pile of brush with the identifying marks partially erased. The indictment in that case was for larceny of property of the United States, while it was in control of the railroads. We affirmed the judgment of conviction on the ground that the circumstances unexplained were sufficient to sustain a verdict that the defendant had stolen these tires in which the United States had a special property as bailee. That decision, as well as Wilson v. United States, 162 U. S. 613, 16 S. Ct. 895, 40 L. Ed. 1090, Rosen v. United States (C. C. A.) 271 F. 651, 655, and Drew v. United States (C. C. A.) 27 F.(2d) 715, would seem to justify the jury in the present case in inferring that Di Carlo was the original thief. If he was not, he was in a position where he could call witnesses to show that his possession of the car was innocent, and thus meet any inference of guilt, but he offered no evidence whatever. If the jury were at liberty to find that he stole the car, they certainly might infer that he also caused it to be transported from Illinois, where it was stolen, to New York, where it was later found in his possession. From the same circumstances they were at liberty to find that he received or concealed or stored it while a part of interstate commerce. The fictitious registration, the altered motor number, and the denial of any knowledge about the car, all evidence a concealment by means of these acts to prevent identification. The possession after transit, and in the state of destination, justifies the inference that the defendant received and stored the car at the end of the interstate journey. The decisions in Davidson v. United States (C. C. A.) 61 F.(2d) 250, and Wolf v. United States (C. C. A.) 36 F.(2d) 450, are not in conflict with this conclusion, for in each of them the proof showed that the vehicle had ceased to move in interstate commerce before it was received by the defendant.

The Ohio certificate of title cannot help the defendant. It purported to show a transfer to the unidentifiable and apparently fictitious Frank Goldman, whom the jury might in view of all the suspicious circumstances believe to be an alter ego for Di Carlo himself.

■■ The judge in his charge spoke of the inference which the jury might draw, because of possession of a stolen car, as a presumption of law. While this was not strictly correct, and the presumption, or, speaking more properly, the inference which might be indulged in, was one of fact, we have no reason to suppose that the jury were misled as to their duties. After employing the word "presumption" somewhat inartificially, he charged them that the "presumption of possession is to be taken into consideration with all the other evidence in the case," that the evidence in the case was circumstantial, and that "the circumstances must be consistent with guilt all the way through. It is a chain which must be equally strong in every link and therefore the circumstances must be such that you are able to say that the government has established the fact that the defendant committed this crime beyond a reasonable doubt." We see nothing prejudicial in what was said. Moreover, at the close of the charge, upon an interrogation by the judge, defendant's counsel stated he had no exceptions to the charge, and he submitted no requests.

■■ During summation, the prosecuting counsel remarked: "The defendant has not taken the stand." This statement seems to have been induced by a promise made by the defendant's counsel the day before, and not fulfilled, that he would call witnesses for the defense. The comment was, however, clearly improper, and is to be deprecated, but in the charge the court told the jury that the defendant had a right to take the stand or not as he willed, and added: "The fact that he did not take the stand is not to create any presumption against him. From the fact alone that he did not take the stand, you are not to presume that any evidence he might

have given, had he taken the stand, would not be to his benefit in this case."

Where a defendant has called no witnesses and has not attempted in any way to rebut the inference which may be drawn from the possession of stolen goods, we are not disposed to reverse a judgment after a trial that was entirely regular except for this single incident, when the judge has covered the very point in his charge. We should be blind to realities if we supposed that juries are unconscious of the omission of a defendant to take the stand, and we think the express instruction to the jury in this case, that this fact must not prejudice the defendant, did all that could ever be done to prevent the consideration by them of the omission in arriving at their verdict.

Judgment affirmed.

CHASE, Circuit Judge, dissents without opinion.